******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* WILLIAM
HYDE BRADLEY
(AC 42061)
(AC 42062)

DiPentima, C. J., and Keller and Sheldon, Js.

*Syllabus*

The defendant appealed to this court from the judgments of the trial court
rendered in accordance with his conditional pleas of nolo contendere
to charges of sale of a controlled substance and violation of probation.
The charges stemmed from the discovery by probation officers of
approximately thirty ounces of marijuana in the defendant's possession
while they were conducting a home visit at his residence. At that time,
the defendant was serving a sentence of probation in connection with
a prior conviction of possession of marijuana with intent to sell. The
defendant filed motions to dismiss the charges, claiming, inter alia, that
his prosecution under Connecticut's statutes criminalizing the posses-
sion and sale of marijuana violated his rights under the equal protection
clause of the United States constitution because such statutes were
enacted for the illicit purpose of discriminating against persons of Afri-
can-American and Mexican descent. Following a hearing on the motions,
the trial court, relying on *State* v. *Long* (268 Conn. 508), in which our
Supreme Court stated that a genuine likelihood of criminal liability is
sufficient to confer standing to challenge a statute, determined that
although the defendant is Caucasian, he had standing to raise an equal
protection challenge to the statutes under which he was charged, con-
cluding that the defendant did not necessarily need to be a member of
the class discriminated against by a challenged statute to be personally
aggrieved by the statute. The trial court, however, denied the defendant's
motions, ruling that he could not prevail on the merits of his equal
protection claim. On the defendant's consolidated appeals to this court,
*held* that the defendant could not prevail on his claim that the trial
court erred in denying his motions to dismiss: although the trial court
misapplied the rule set forth in *Long* and thereby incorrectly concluded
that the defendant did not necessarily need to be a member of the class
discriminated against to be personally aggrieved by a challenged statute,
it nevertheless properly denied the motions to dismiss, as the defendant,
who is not a member of the subject minority groups, lacked standing
to raise his equal protection claim in his individual capacity because he
did not demonstrate that he had a personal interest that had been
or could ever be at risk of being injuriously affected by the alleged
discrimination in the enactment of the relevant statute (§ 21a-277 [b]),
and his claim did not allege a specific injury to himself beyond that of
a general interest of all marijuana sellers facing conviction under that
statute; moreover, a balancing of the factors set forth in *Powers* v. *Ohio*
(499 U.S. 400) pertaining to third-party standing weighed against the
defendant having standing to raise an equal protection claim on behalf
of the racial and ethnic minorities who possessed the constitutional
rights that were allegedly violated, as the relationship between the defen-
dant and those third parties was not close, and there existed no hin-
drance to the ability of a criminal defendant who is a member of a racial
or ethnic minority group charged under § 21a-277 (b) from asserting his
or her own constitutional rights in his or her own criminal prosecution.

Argued September 19—officially released December 24, 2019

*Procedural History*

Information, in the first case, charging the defendant
with the crimes of possession of one-half ounce or
more of a cannabis-type substance within 1500 feet of
a school and sale of a controlled substance, and infor-
mation, in the second case, charging the defendant with
violation of probation, brought to the Superior Court

in the judicial district of Middlesex, where the court *Keegan, J.*, denied the defendant's motions to dismiss; thereafter, the defendant was presented to the court on conditional pleas of nolo contendere to sale of a controlled substance and violation of probation; judgments in accordance with the pleas; subsequently, the state entered a nolle prosequi on the charge of possession of one-half ounce or more of a cannabis-type substance within 1500 feet of a school, and the defendant filed separate appeals to this court, which consolidated the appeals. *Affirmed*.

*Naomi T. Fetterman*, with whom was *Aaron J. Romano*, for the appellant (defendant).

*James M. Ralls*, assistant state's attorney, with whom, on the brief, were *Michael Gailor*, state's attorney, and *Russell Zentner*, senior assistant state's attorney, for the appellee (state).

*Opinion*

SHELDON, J. In this consolidated appeal, the defendant, William Hyde Bradley, appeals from judgments that were rendered against him by the trial court following his entry of conditional pleas of nolo contendere to charges of sale of a controlled substance in violation of General Statutes § 21a-277 (b) and violation of probation in violation of General Statutes § 53a-32. On appeal, the defendant claims that the court erred in denying his motions to dismiss those charges, wherein he argued, inter alia, that his prosecution under Connecticut's statutes criminalizing the possession and sale of marijuana violated his rights under the equal protection clause of the United States constitution because such statutes were enacted for the illicit purpose of discriminating against persons of African-American and Mexican descent. We affirm the judgments of the court, concluding that it did not err in denying the defendant's motions to dismiss. We do so, however, on the alternative ground raised by the state that the defendant, as a nonmember of either group of persons against whom he claims that the challenged statutes were enacted to discriminate, lacked standing to bring such an equal protection claim. Accordingly, we do not reach the merits of the defendant's equal protection claim on this appeal.

The following procedural history and facts, as stipulated to by the parties, are relevant to our resolution of this appeal. On January 13, 2017, while the defendant was serving a sentence of probation in connection with a prior conviction of possession of marijuana with intent to sell, probation officers conducting a home visit at his residence discovered approximately thirty ounces of marijuana in his possession. On the basis of that discovery, the state charged the defendant, in two separate informations, as follows: in docket number M09M-CR17-0210994-S, with one count each of possession of one-half ounce or more of marijuana within 1500 feet of a school in violation of General Statutes § 21a-279 (b) and sale of a controlled substance in violation of § 21a-277 (b); and in docket number MMX-CR14-0204977-T, with violation of probation in violation of § 53a-32.

The defendant moved to dismiss the charges by filing two parallel motions to dismiss, one in each docket number. He argued in those motions, inter alia, that his prosecution under Connecticut's statutes criminalizing the possession and sale of marijuana violated (1) his right to equal protection under the fourteenth amendment to the United States constitution because such statutes were enacted for the illicit purpose of discriminating against persons of African-American and Mexican descent; and (2) his right to equal protection under article first, § 20, of the constitution of Connecticut because the enforcement of such statutes had a dispa-

rate impact on persons of African-American descent. The state filed a memorandum of law in opposition to the defendant's motions to dismiss, to which the defendant responded by filing a reply. Following a hearing on the motions, the court ordered the parties to file supplemental memoranda addressing whether the defendant, whom the court had found to be Caucasian, had standing to bring an equal protection challenge to statutes on the ground that they had been enacted for the purpose of discriminating against members of racial or ethnic minority groups of which he was not a member. After the parties filed their supplemental memoranda, the court heard oral argument. Thereafter, in a memorandum of decision dated June 1, 2018, the court agreed with the defendant that, regardless of his race or ethnicity, he had standing to bring an equal protection challenge to the statutes under which he was charged because there was a genuine likelihood that he, as a person so charged, would be convicted under those statutes. The court went on to rule, however, that the defendant could not prevail on the merits of his equal protection claim because even if he could prove that enforcement of the challenged statutes had a disparate impact on persons of African-American or Mexican descent, he could not prove that the legislature's true purpose in enacting those statutes was to discriminate against the members of either such group. Thereafter, upon conducting an analysis under *State* v. *Geisler*, 222 Conn. 672, 685, 610 A.2d 1225 (1992), the court also rejected the defendant's additional claim that his prosecution under the challenged statutes violated his rights under the equal protection clause of the Connecticut constitution, which he had based on the theory that that provision affords greater protection than its federal counterpart because violation of that provision, unlike the federal equal protection clause, can be established by proof of disparate impact alone.[1] Rejecting that argument, the court denied the defendant's motions to dismiss in their entirety.

On August 28, 2018, the defendant entered pleas of nolo contendere to charges of sale of a controlled substance and violation of probation, which were based on his alleged possession of, with intent to sell, the marijuana that the probation officers had found in his residence. The defendant's pleas, which were entered pursuant to General Statutes § 54-94a, were conditioned on preserving his right to appeal from his resulting convictions based on the trial court's prior denial of his motions to dismiss. The court thereafter sentenced the defendant as follows: on his conviction of sale of a controlled substance, he was sentenced to an unconditional discharge; and on his violation of probation, his probation was revoked, and he was sentenced to a term of five and one-half years of incarceration, execution suspended, and two years of probation. These appeals, later consolidated by order of this court, followed.[2]

On appeal, the defendant claims that the court improperly denied his motions to dismiss. He argues here, as he did before the trial court, that Connecticut's statutes criminalizing the possession and sale of marijuana were enacted for the illicit purpose of discriminating against persons of African-American and Mexican descent, and thus that his prosecution under those statutes violated the equal protection clause of the United States constitution. The defendant does not claim, however, that the court erred in denying his alternative equal protection claim under the Connecticut constitution.

In his brief, the defendant initially traces the history of cannabis cultivation from ancient times through the time of its criminalization in Connecticut in the 1930s. He then describes and documents what he claims to have been the pervasive atmosphere in this country in the 1930s of discrimination against racial and ethnic minority groups whose members were known or believed to use marijuana. Against this background, he argues that the federal marijuana prohibition that was enacted in that time frame, for the illicit purpose of discriminating against African-Americans and Mexicans, influenced several states, including Connecticut, to enact their own state laws criminalizing the possession and sale of marijuana for the same discriminatory purpose. The state disputes the defendant's contention that Connecticut's statutes criminalizing the possession and sale of marijuana were enacted for the purpose of discriminating against racial and ethnic minorities. As a threshold matter, however, it argues, as it did before the trial court, that the court lacked subject matter jurisdiction over the defendant's equal protection claim because, as a Caucasian, he lacked standing to vindicate the equal protection rights of members of racial or ethnic minority groups to which he did not belong. The defendant counters by arguing, as he did successfully before the trial court, that regardless of his race or ethnicity, he had standing to raise his constitutional claim because, as a person charged under such allegedly unconstitutional statutes, he personally faced a genuine risk of being convicted thereunder if he were not permitted to prosecute his motions to dismiss.

Because a party's lack of standing to bring a claim implicates the trial court's subject matter jurisdiction over that claim, we must first address this jurisdictional issue. See *New Hartford* v. *Connecticut Resources Recovery Authority*, 291 Conn. 511, 518, 970 A.2d 583 (2009). We begin by reviewing some well established principles of standing. "Generally, standing is inherently intertwined with a court's subject matter jurisdiction. . . . We have long held that because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary. . . . In addition, because standing implicates the court's subject matter jurisdiction, the issue of standing is not subject to

waiver and may be raised at any time." (Internal quotation marks omitted.) *State* v. *Brito*, 170 Conn. App. 269, 285, 154 A.3d 535, cert. denied, 324 Conn. 925, 155 A.3d 755 (2017).

"Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . When standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue . . . .

"Standing is established by showing that the party claiming it is authorized by statute to bring suit or is classically aggrieved. . . . The fundamental test for determining [classical] aggrievement encompasses a well-settled twofold determination: [F]irst, the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in [the subject matter of the challenged action], as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the [challenged action]. . . . Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." (Internal quotation marks omitted.) *State* v. *Long*, 268 Conn. 508, 531–32, 847 A.2d 862, cert. denied, 543 U.S. 969, 125 S. Ct. 424, 160 L. Ed. 2d 340 (2004).

To establish his standing to bring an equal protection challenge to the statutes under which he was charged in this case, the defendant does not claim that he was authorized by statute to bring such a challenge or that he had third-party standing to bring the challenge in a representational capacity on behalf of others. Instead, he claims only that he had standing to bring that challenge in his individual capacity, insisting that he is personally aggrieved by the statutes' unconstitutionality because he was charged with violating the statutes, and thus faced a genuine risk of being convicted thereunder. The court's conclusion on the issue of standing, which the defendant relies on before us, was that "the defendant need not necessarily be a member of the class discriminated against [by a challenged statute] in order to be personally aggrieved by the statute. As our Supreme Court has repeatedly concluded 'a genuine likelihood of criminal liability or civil incarceration is sufficient to confer standing [to challenge a statute]'. . . . *State* v. *Long*, supra, 268 Conn. 532 . . . ." (Emphasis omitted.) The state disagrees, arguing that the defendant and the trial court misunderstood and misapplied the rule set forth in *Long*, which was never

intended to empower litigants to raise claims in their individual capacity based on alleged violations of others' constitutional rights. For the following reasons, we agree with the state.

In *Long*, the defendant, who had been charged with assault in the second degree, was found not guilty by reason of mental disease or defect after a trial to the court. Id., 511. The court thereafter committed the defendant, on the basis of that finding, to the jurisdiction of the Commissioner of Mental Health and Addiction Services pursuant to General Statutes § 17a-582 (a) for initial confinement and examination. Id., 511–12. Following a mandatory psychiatric examination, the commissioner issued a report concerning the defendant's mental health. Id., 512. Following a hearing, the trial court ordered the defendant committed to the jurisdiction of the Psychiatric Security Review Board (board) for a period of five years, which was the maximum period for such a commitment because it was the maximum period for which he could have been incarcerated had he been convicted of and sentenced for the charged offense.[3] Id. Prior to the expiration of the defendant's initial five year commitment, however, the state's attorney filed a petition, pursuant to General Statutes § 17a-593 (c),[4] to have the defendant's commitment extended beyond its initial five year term. Id., 513. The trial court granted the state's petition, and thereafter recommitted him on three more occasions pursuant to § 17a-593 (c). Id.

After the state filed its fifth petition for recommitment in March, 2001, the board filed a report recommending further recommitment. Id., 513. The defendant moved to strike the board's report and to dismiss the state's petition, claiming, inter alia, that once an acquittee reaches the maximum term of his initial commitment, any order granting a state's petition for recommitment pursuant to § 17a-593 (c) is unconstitutional because, inter alia, it deprives the acquittee of his liberty without affording him the same right to mandatory periodic judicial review of his commitment as is afforded convicted prisoners who are civilly committed to psychiatric treatment facilities while they are incarcerated serving criminal sentences. Id. The trial court at first denied the defendant's motion to dismiss and granted the state's petition for recommitment. Id., 514. Later, however, upon reconsidering its ruling sua sponte, the court vacated its latest order of recommitment and granted the defendant's motion to dismiss the state's petition on the grounds, inter alia, that § 17a-593 (c) violated (1) his right to equal protection under the United States constitution because it treats acquittees, like the defendant, differently from convicted prisoners who are civilly committed at some point after they have been incarcerated, and (2) his right to equal protection under the constitution of Connecticut because it discriminates on the basis of mental disability. Id., 514–15. The court

nevertheless found that the state had proven that the defendant "has a mental illness and would be a danger to others were he discharged from confinement," and thus ordered that he be held for sixty days to permit the state, if it chose to, to file a petition for civil commitment. (Internal quotation marks omitted.) Id., 515. The state appealed from the court's judgment of dismissal and challenged all grounds on which the court had found § 17a-593 (c) to be unconstitutional. Id., 516. The appeal was then transferred to our Supreme Court. Id., 516.

On appeal, the state claimed, inter alia, that the defendant lacked standing to bring either a state or a federal equal protection challenge to § 17a-593 (c). Id., 530. The state did not claim that the defendant lacked a specific, personal and legal liberty interest in any recommitment proceedings under § 17a-593 (c) but argued that his liberty interest had not been specially and injuriously affected by his recommitment because, as an acquittee, he had already received more judicial review of his commitment than a civil committee would have been entitled to receive. Id., 532. In concluding that the defendant had standing to raise his due process challenge, our Supreme Court reasoned as follows: "We previously have concluded that a genuine likelihood of criminal liability or civil incarceration is sufficient to confer standing. . . . [I]n the present case, the defendant challenges the acquittee recommitment statute, § 17a-593 (c), which, if applied to him in the future, could subject him to further recommitment that adversely would affect his liberty interest. Moreover, the trial court specifically found at the most recent recommitment hearing that the defendant still suffered from a mental illness and posed a danger to others were he discharged from confinement. These factual findings demonstrate a genuine likelihood that the defendant is susceptible to the deprivation of his liberty interest in the future via recommitment in accordance with § 17a-593 (c). Consequently, because the defendant risks actual prospective deprivation of his liberty interest under the challenged statute, we conclude that he is classically aggrieved, and has standing to challenge the statute." (Citations omitted; internal quotation marks omitted.) Id., 532–33.

Understood against this background, *Long* cannot be read to empower parties to bring constitutional challenges in their individual capacity based on alleged violations of others' constitutional rights. Instead, it clarifies that, although a party has only individual standing to challenge alleged violations of his own constitutional rights, such challenges are not necessarily limited to ongoing violations of those rights, but may be directed to future violations of such rights that are reasonably likely to occur. Had the defendant in *Long* risked no "actual prospective deprivation of his liberty interest under the challenged statute" in the future, he would

not have had standing to challenge the statute in his individual capacity on the basis of any risk, however genuine, enforcement of the statute may have posed to the rights of others.

To provide further context for the rule in *Long*, we also examine *Ramos* v. *Vernon*, 254 Conn. 799, 761 A.2d 705 (2000), which was cited in *Long*. The ordinance at issue in *Ramos* placed a nighttime curfew on minors under the age of eighteen who were unaccompanied by a parent, a guardian or another adult having custody or control over them, and made it unlawful for any adult having custody of or control over a minor under the age of sixteen to allow the minor to violate the curfew ordinance. Id., 802–805. The fourteen year old minor plaintiff alleged that he had engaged in, and was continuing to engage in, conduct considered unlawful under the ordinance. Id., 810. The court concluded on that basis that if the minor's conduct continued in the future as he had pleaded that it would, then both he and his mother could be prosecuted under the statute in the future and thus could be injured by its alleged constitutional infirmity. Id., 810–11. Accordingly, the court ruled that both the mother and the minor had standing, in their individual capacities, to assert that the ordinance violated their constitutional rights because, in language later repeated by the court in *Long*, "a genuine likelihood of criminal liability or civil incarceration is sufficient to confer standing." (Internal quotation marks omitted.) Id., 809.

*Long* and *Ramos* are thus inapposite to the present case. First, the defendant in the present case was charged under § 21a-277 (b) at the time of the motions to dismiss, and thus the likelihood of its *future application* against him is not at issue, as it was in *Long* and *Ramos*. Second, the defendant in *Long* was a member of the class of insanity acquittees whose rights he sought to vindicate, just as the minor and his mother in *Ramos* were members of the classes of persons whose own rights were at genuine risk of being violated if they were prosecuted under the challenged statute. In the present case, by contrast, the defendant is not a member of the class whose rights he seeks to vindicate. The defendant in the present case is not now and will never be a member of either minority group against whom he claims the marijuana statutes were enacted to discriminate, and, thus, he will never personally be discriminated against on the basis of race or ethnicity by virtue of application of § 21a-277 (b) to him. Simply put, the defendant's equal protection claim seeks to redress rights of racial minorities, a class of which he is not a member. Consequently, the defendant has not demonstrated that he has a personal interest that has been or could ever be at risk of being injuriously affected by the alleged discrimination in the enactment of the statute. The defendant's argument that § 21a-277 (b) was enacted with a racially discriminatory purpose

does not allege a specific injury to himself beyond that of a general interest of all marijuana sellers facing conviction under the statute.[5]

The trial court's conclusion that "the defendant need not necessarily be a member of the class discriminated against [by a challenged statute] in order to be personally aggrieved by the statute" is simply incorrect. First, although controlling case law on rare occasion has permitted litigants to establish standing by proving classical aggrievement *in a representative capacity* based on alleged violations of others' constitutional rights, it has never expanded the scope of classical aggrievement *in an individual capacity* to eliminate the requirement that the litigant himself be personally aggrieved by the alleged violation. See, e.g., *State* v. *Long*, supra 268 Conn. 531–32 (classical aggrievement includes requirement of "a specific, personal and legal interest in [the subject matter of the challenged action], as distinguished from a general interest" [internal quotation marks omitted]). Second, although the defendant has not claimed, and the trial court did not find, that he was classically aggrieved in a representative capacity by his prosecution under the challenged statutes, he has not in any event met the exacting requirements for the assertion of such a representational claim. The defendant expressly states in his reply brief that he does not claim to have third-party standing, and appropriately so, because third-party standing applies in limited circumstances that manifestly do not exist here.

Under federal law, a party "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties. . . . This rule assumes that the party with the right has the appropriate incentive to challenge (or not challenge) governmental action and to do so with the necessary zeal and appropriate presentation. . . . It represents a healthy concern that if the claim is brought by someone other than one at whom the constitutional protection is aimed . . . the courts might be called upon to decide abstract questions of wide public significance even though other governmental institutions may be more competent to address the questions and even though judicial intervention may be unnecessary to protect individual rights . . . . We have not treated this rule as absolute, however, recognizing that there may be circumstances where it is necessary to grant a third party standing to assert the rights of another." (Citations omitted; internal quotation marks omitted.) *Kowalski* v. *Tesmer*, 543 U.S. 125, 129–30, 125 S. Ct. 564, 160 L. Ed. 2d 519 (2004).

In cases involving this principle, such as *Powers* v. *Ohio*, 499 U.S. 400, 111 S. Ct. 1364, 113 L. Ed. 2d 411 (1991), the United States Supreme Court explained that it has permitted parties to bring actions on behalf of third parties provided that the party makes two addi-

tional showings, beyond that of an article three injury: (1) "close relation to the third party" who possesses the right and (2) "some hindrance to the third party's ability to protect his or her own interests." Id., 410–11; see also *Kowalski* v. *Tesmer*, supra, 543 U.S. 130 (describing two additional factors in *Powers*).

With respect to the first factor, the United States Supreme Court explained that "in certain circumstances the relationship between the litigant and the third party may be such that the former is fully, or very nearly, as effective a proponent of the right as the latter." (Internal quotation marks omitted.) *Powers* v. *Ohio*, supra 499 U.S. 413. This factor is more likely to weigh in favor of standing if the relationship between the third party and the litigant seeking standing is "one of special consequence." *Caplin & Drysdale, Chartered* v. *United States*, 491 U.S. 617, 623 n.3, 109 S. Ct. 2646, 105 L. Ed. 2d 528 (1989). For example, a doctor-patient relationship and an attorney-client relationship have qualified as close relationships for this purpose, mainly due to the professionally intimate advice and decisions arising from such relationships. See, e.g., *United States Dept. of Labor* v. *Triplett*, 494 U.S. 715, 719–21, 110 S. Ct. 1428, 108 L. Ed. 2d 701 (1990) (attorney had standing to raise due process claims to fee restrictions on behalf of clients he represented in black lung benefit cases); *Singleton* v. *Wulff*, 428 U.S. 106, 117–18, 96 S. Ct. 2868, 49 L. Ed. 2d 826 (1976) (physician "intimately involved" in women's abortion decision and thus "uniquely qualified" to litigate against statutory interference with that decision); *Griswold* v. *Connecticut*, 381 U.S. 479, 85 S. Ct. 1678, 14 L. Ed. 2d 510 (1965) (physician and Planned Parenthood official were effective advocates for persons seeking contraceptive advice with whom they had confidential professional relationships).

In the context of market access, sellers who asserted the rights of buyers seeking access to their market have been found to have a sufficiently close relationship with such buyers to give them standing to raise the buyers' claims. The United States Supreme Court in *Craig* v. *Boren*, 429 U.S. 190, 192–97, 97 S. Ct. 451, 50 L. Ed. 2d 397 (1976), held that a licensed vendor of 3.2 percent beer had standing to challenge the constitutionality of a statute that, in a gender discriminatory manner, prohibited the sale of 3.2 percent beer to males under the age of twenty-one and females under the age of eighteen. The court reasoned that the vendor might be deterred by the statutory sanctions thereby causing indirect harm to the rights of third parties and, accordingly, was permitted to act as an advocate for third parties seeking access to the market. Id., 195. Relying primarily on *Craig*, the United States Supreme Court in *Carey* v. *Population Services International*, 431 U.S. 678, 681–84, 97 S. Ct. 2010, 52 L. Ed. 2d 675 (1977), held that a corporation engaged in the mail order retail sale of nonmedical contraceptive devices had standing on

its own behalf and on behalf of potential customers who sought access to its market to challenge the constitutionality of a statute criminalizing the distribution of contraceptives to anyone under the age of sixteen, prohibiting their distribution to anyone over the age of sixteen by anyone other than a licensed pharmacist, and banning the advertising and display of contraceptives. The court reasoned that the corporation "is among the vendors and those in like positions (who) have been uniformly permitted to resist efforts at restricting their operations by acting as advocates for the rights of third parties who seek access to their market or function. . . . As such, [the corporation] is entitled to assert those concomitant rights of third parties that would be diluted or adversely affected should (its) constitutional challenge fail." (Citations omitted; internal quotation marks omitted.) Id., 683–84.

Those who act as advocates for the rights of others have also been held to have third-party standing. Thus, in *Eisenstadt* v. *Baird*, 405 U.S. 438, 440, 92 S. Ct. 1029, 31 L. Ed. 2d 349 (1972), the defendant, who had been convicted of providing a contraceptive device to a woman following a lecture on contraception, was held to have standing to challenge the statute that made it a felony for anyone other than a registered physician or registered pharmacist to distribute contraceptives. The court determined that the defendant's relationship with "those whose rights he seeks to assert is not simply that between a distributor and potential distributees, but that between an advocate of the rights of persons to obtain contraceptives and those desirous of doing so. The very point of [the defendant's] giving away the vaginal foam was to challenge the Massachusetts statute that limited access to contraceptives." Id., 445.

In *Barrows* v. *Jackson*, 346 U.S. 249, 251–60, 73 S. Ct. 1031, 97 L. Ed. 1586 (1953), a Caucasian defendant, who was party to a racially restrictive covenant and who was being sued for damages by the covenantors because she had conveyed her property to African-Americans, was held to have standing to challenge the enforcement of the covenant on the ground that it violated the equal protection rights of prospective African-American purchasers. The United States Supreme Court, in a later case, explained that "[t]he relationship [in *Barrows*] between the defendant and those whose rights he sought to assert was . . . between one who acted to protect the rights of a minority and the minority itself." *Eisenstadt* v. *Baird*, supra, 405 U.S. 445.

In *Powers*, the United States Supreme Court concluded that the defendant had standing to contest the use of peremptory challenges in a racially discriminatory manner regardless of whether the defendant and the excluded jurors were of the same race. *Powers* v. *Ohio*, supra, 499 U.S. 410–16. The court stated: "For over a century, this Court has been unyielding in its

position that a defendant is denied equal protection of the laws when tried before a jury from which members of his or her race have been excluded by the State's purposeful conduct. The Equal Protection Clause guarantees the defendant that the State will not exclude members of his race from the jury venire on account of race . . . . [A defendant] does have the right to be tried by a jury whose members are selected by nondiscriminatory criteria." (Citations omitted; internal quotation marks omitted.) Id., 404. After setting forth such principles, the court considered "whether a criminal defendant has standing to raise the equal protection rights of a juror excluded from service in violation of these principles." Id., 410. The court determined that the defendant and the excluded jurors shared a close relationship that began during voir dire and had a "common interest in eliminating racial discrimination from the courtroom." Id., 413. The court reasoned that the juror excluded on the basis of race suffers humiliation and "may lose confidence in the court and its verdicts, as may the defendant if his or her objections cannot be heard. This congruence of interests makes it necessary and appropriate for the defendant to raise the rights of the juror." Id., 414.

The second factor in assessing third-party standing "involves the likelihood and ability of the third parties . . . to assert their own rights." Id., 414. The excluded jurors in *Powers* faced "daunting" obstacles to bringing an action on their own behalf, which included not only "the economic burdens of litigation" but the fact that "[p]otential jurors are not parties to the jury selection process and have no opportunity to be heard at the time of their exclusion. Nor can excluded jurors easily obtain declaratory or injunctive relief when discrimination occurs through an individual prosecutor's exercise of peremptory challenges." Id., 414. The facts in *Barrows* v. *Jackson*, supra, 346 U.S. 249, presented "a unique situation in which it is the action of the state court which might result in a denial of constitutional rights and in which it would be difficult if not impossible for the persons whose rights are asserted to present their grievance before any court." Id., 257. The United States Supreme Court further reasoned that the covenantor in *Barrows* had the power under the racially discriminatory restrictive covenant to continue or end discrimination and was the only effective adversary of the restrictive covenant. Id., 258.

In *Singleton* v. *Wulff*, supra, 428 U.S. 117, there were "several obstacles" in a woman's path to challenging an abortion statute, such as privacy and imminent mootness. Although the obstacles were not "insurmountable" due to the ability to bring an action under a pseudonym and exceptions to the mootness doctrine, the court noted that there was little loss in terms of effective advocacy by permitting a physician to raise the claim. Id., 118; see also *Carhart* v. *Stenberg*, 972 F. Supp. 507,

520–21 (D. Neb. 1997) ("the pregnant women who are the doctor's patients have significant obstacles to bringing suit on their own, such as a desire for privacy and the likelihood that their claims would be mooted by the time-sensitive nature of pregnancy and abortion").

We now examine these principles in the context of the present case. We conclude that a balancing of the factors, while bearing in mind the exceptional nature of third-party standing, weighs against the defendant having standing to raise a claim on behalf of classes of racial and ethnic minorities to which he does not belong. With respect to the factor of a close relationship, the defendant obviously does not have a professional or confidential relationship with the possessors of the right, such as the physician had with his patients in *Singleton* or the lawyer had with his clients in *Triplett*. The defendant does not raise a market access claim seeking to assert the rights of racial and ethnic minority marijuana purchasers similar to the claim of the beer vendor in *Craig* or the retail seller of contraceptives in *Carey*. In contrast to the relationship of trust that existed in *Powers* between the defendant and excluded jurors that began during voir dire, the defendant in the present case seeks to advocate for the rights of hypothetical persons with whom he has no relation. The interests of the defendant and those who possess the right are similar to the extent that we fairly may assume that neither wishes to be convicted under the statute. The defendant, however, has not made a showing that, in being charged with sale of a controlled substance, he sought to advocate on behalf of racial or ethnic minority sellers or purchasers. In fact, he expressly disavows such a purpose. Therefore, his actions in selling marijuana do not create a close relationship with the third parties in any way similar to the advocate in *Barrows*, who conveyed her property to African-Americans in violation of a racially discriminatory covenant, or the advocate in *Eisenstadt*, who gave away a contraceptive device in order to challenge a statute criminalizing such action. Rather, the defendant in the present case expresses only a general interest in avoiding prosecution, independent of any relationship or connection to the possessors of the right he claims to have been violated. Therefore, it cannot be said that the defendant "is fully, or very nearly, as effective a proponent of the right as the [third party]." *Singleton* v. *Wulff*, supra, 428 U.S. 115.

The relationship between the defendant and the third parties is not close, but even if it were close, the importance of the ability of a minority marijuana seller to raise a claim on his or her own behalf is not diminished. In *Singleton* the plurality opinion stated: "Even where the relationship is close, the reasons for requiring persons to assert their own rights will generally still apply. If there is some genuine obstacle to such assertion, however, the third party's absence from court loses its

tendency to suggest that his right is not truly at stake, or truly important to him, and the party who is in court becomes by default the right's best available proponent." Id., 116. The daunting obstacles the excluded jurors faced in *Powers* to challenging the racially discriminatory use of preemptory challenges on their own behalf, such as the expense of litigation and the fact that they are not parties to the jury selection process, and the barriers discussed in *Singleton* to a women's ability to challenge an abortion statute, do not exist in the present case. See *Caplin & Drysdale, Chartered* v. *United States*, supra, 491 U.S. 624 n.3 ("[t]he second . . . factor [of hindrance] counsels against review . . . a criminal defendant suffers none of the obstacles discussed in [*Singleton* v.] *Wulff*, supra, 428 U.S. [116–117], to advancing his own constitutional claim"). In the criminal context, the state's proper presentment of an information initiates the case. *State* v. *Pompei*, 52 Conn. App. 303, 307, 726 A.2d 644 (1999). It is axiomatic that criminal defendants are parties to their own criminal proceedings, and *Gideon* v. *Wainwright*, 372 U.S. 335, 342, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963), made the sixth amendment right to counsel applicable to state prosecutions through the due process clause of the fourteenth amendment. In the present case, the second factor overwhelmingly weighs against third-party standing because there exists no hindrance to the ability of a criminal defendant who is a member of a racial or ethnic minority group charged under § 21a-277 (b) from asserting his or her own constitutional rights in his or her own criminal prosecution.

Our conclusion that the defendant does not have third-party standing coincides with the purposes of the general rule under Connecticut law against third-party standing. Regarding the general principles of standing, this court has explained that "the requirement that a party have standing ensures that courts and parties are not hindered by suits brought to vindicate nonjusticiable interests, and protects the rights of others from being affected by precedential judicial decisions that do not involve the individuals or entities with the most at stake and may not have been contested with the appropriate diligence and vigor." *Third Taxing District* v. *Lyons*, 35 Conn. App. 795, 798, 647 A.2d 32, cert. denied, 231 Conn. 936, 650 A.2d 173 (1994). "Only members of a class whose constitutional rights are endangered by a statute may ask to have it declared unconstitutional. . . . Courts are instituted to give relief to parties whose rights have been invaded, and to give it at the instance of such parties; and a party whose rights have not been invaded cannot be heard to complain if the court refuses to act at his instance in righting the wrongs of another who seeks no redress." (Citations omitted; internal quotation marks omitted.) *Shaskan* v. *Waltham Industries Corp.*, 168 Conn. 43, 49–50, 357 A.2d 472 (1975).

For the foregoing reasons, we conclude that the defendant does not have standing to raise his equal protection claim. We therefore uphold the court's denial of the defendant's motions to dismiss on this dispositive alternative ground.

The judgments are affirmed.

In this opinion the other judges concurred.

[1] The court also rejected the defendant's claim that Connecticut law on the possession and sale of marijuana has been superseded by federal law. The defendant does not appeal from the court's rejection of this claim.

[2] The defendant filed two separate appeals from the trial court's judgments. The defendant filed a motion to consolidate the appeals, which was granted.

[3] "The trial court acted pursuant to General Statutes § 17a-582 (e) (1) . . . which provides in relevant part: 'If the court finds that the acquittee is a person who should be confined or conditionally released, the court shall order the acquittee committed to the jurisdiction of the board and . . . confined in a hospital for psychiatric disabilities . . . for custody, care and treatment pending a hearing before the board pursuant to section 17a-583; provided (A) the court shall fix a maximum term of commitment, not to exceed the maximum sentence that could have been imposed if the acquittee had been convicted of the offense . . . .' General Statutes (Rev. to 1985) § 53a-35a provides in relevant part: 'For any felony committed on or after July 1, 1981, the sentence of imprisonment shall be a definite sentence and the term shall be fixed by the court as follows . . . (6) for a class D felony, a term not less than one year nor more than five years . . . .' " *State* v. *Long*, supra, 268 Conn. 512 n.8.

[4] General Statutes § 17a-593 (c) provides in relevant part: "If reasonable cause exists to believe that the acquittee remains a person with psychiatric disabilities . . . to the extent that his discharge at the expiration of his maximum term of commitment would constitute a danger to himself or others, the state's attorney, at least one hundred thirty-five days prior to such expiration, may petition the court for an order of continued commitment of the acquittee."

[5] In support of the argument that he has standing to raise the equal protection claim on his own behalf, the defendant highlights the following quote from Justice Ginsberg's concurrence in *Bond* v. *United States*, 564 U.S. 211, 227, 131 S. Ct. 2355, 180 L. Ed. 2d 269 (2011): "Our decisions concerning criminal laws infected with discrimination are illustrative. The Court must entertain the objection—and reverse the conviction—even if the right to equal treatment resides in someone other than the defendant." First, concurring opinions do not establish binding precedent. Second, we are not required to apply federal precedent in determining the issue of aggrievement. See *Burton* v. *Freedom of Information Commission*, 161 Conn. App. 654, 660, 129 A.3d 721 (2015), cert. denied, 321 Conn. 901, 136 A.3d 642 (2016).

The defendant also cites to federal cases in which the parties have been conferred with both standing in their own right and with third-party standing. See *Carey* v. *Population Services International*, 431 U.S. 678, 682–84, 97 S. Ct. 2010, 52 L. Ed. 2d 675 (1977) (mail order retailer's business of selling contraceptives criminalized); *Craig* v. *Boren*, 429 U.S. 190, 192–97, 97 S. Ct. 451, 50 L. Ed. 2d 397 (1976) (beer vendor's act of selling 3.2 percent beer to male patrons under age of twenty-one and females under age of eighteen prohibited); *Carhart* v. *Stenberg*, 972 F. Supp. 507, 520–21 (D. Neb. 1997) (doctor's performance of certain abortion procedure criminalized). Federal cases that analyze standing under article three of the federal constitution are not applicable to the issue of whether the defendant was aggrieved in his own right under Connecticut case law. See *Andross* v. *West Hartford*, 285 Conn. 309, 328–32, 939 A.2d 1146 (2008). We note, however, that these cases are readily distinguishable. Assuming without deciding that the parties in those cases would have been aggrieved under Connecticut law, the statutes at issue in *Carey*, *Craig*, and *Carhart* differ from § 21a-277 (b). The statutes in *Carey*, *Craig* and *Carhart* not only prohibited the conduct of the parties seeking standing, but also intertwined that sanctioned conduct with the rights of the third parties to access the goods or services at issue. In the present case, § 21a-277 (b) criminalizes the defendant's conduct in selling marijuana, but does not intertwine the criminalization of the defendant's actions in selling marijuana with the rights of a racial minority seller to be free from discrimination.